ORIGINAL

THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAR 17 2004
U.S. COURT OF FEDERAL CLAIMS

Randall Gregg, Robert Haltiner, Terrence R. Larson, Peter Roddy, Daniel R. Vick, and John Jensen,
Plaintiffs

vs.

The United States,
Defendant.

No. 04-425C

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

## COMPLAINT

## COUNT I
## JURISDICTION

1. The claims herein are founded on contracts, express or implied-in-fact, with the Government of the United States. This Court has jurisdiction over the claims herein pursuant to the Tucker Act, 28 U.S.C. § 1491.

2. Alternatively, jurisdiction lies in this Court pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et. seq., including the direct access provision, § 609.

3. This action is timely filed, pursuant to the Tucker Act and the Contract Disputes Act.

## PARTIES

4. The plaintiffs, all United States citizens, are commercial fishermen who at all relevant times held valid state-issued licenses for the harvesting of Tanner crab using pot gear in Southeast Alaska.

5. The United States appears in this action represented by the Department of the Interior (hereinafter "the DOI") and its executive agency the National Park Service (hereinafter "the NPS").

## FACTUAL BACKGROUND

6. The marine waters of Glacier Bay, Alaska are the site of a commercial crab fishery which has been of vital importance in the local economy for the past century.

7. In 1980, Congress designated Glacier Bay a National Park.

8. In 1991, the NPS proposed regulations to phase out and restrict commercial crab fishing and other commercial fishing in Glacier Bay National Park. Recognizing the enormous impact which any reduction on commercial fishing would have on the regional economy, the NPS entered into discussions and negotiations with various representatives of the State of Alaska, commercial fishing interests, and members of the potentially affected communities.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

9. On October 21, 1998, the Omnibus Consolidated and Emergency Supplemental Appropriations Act for FY 1999 (Public Law 105-277, 112 Stat. 2681) (hereinafter "the Act") was signed into law.

10. Section 123 of the Act provides specific statutory requirements for the phase-out and restriction of commercial fishing in the marine waters of Glacier Bay.

11. Section 123 of the Act directs the NPS to cooperate with the State of Alaska in developing a management plan for the regulation of commercial fisheries in Glacier Bay proper.

12. In March 1999, the Alaska Department of Fish and Game (hereinafter the "ADF&G") estimated that the Act would cause economic losses to affected parties between $16 million and $23 million.

13. On May 1, 1999, Congress amended Section 123, enacting Section 501 of the 1999 Emergency Supplemental Appropriations Act (Public Law 106-31), which appropriated $23 million for a program to compensate those who were negatively affected by the commercial fishing closures and restrictions.

14. The stated purpose of Section 501 is to fairly compensate United States fish processors, fishing vessel crew members, communities, and others negatively affected by closures and restrictions on commercial fishing in Glacier Bay.

15. In October, 1999, the NPS published a Final Rule that states that the NPS will administer, in a "fair and timely manner," the $23 million compensation program provided by the Act.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

16. In November, 1999, the NPS contracted with the McDowell Group, Inc., a Juneau, Alaska research and consulting firm, to assess the economic impact of the fishing restrictions on individuals, businesses, and communities.

17. From January through June of 2000, numerous public forums were held, at which the NPS received both verbal and written public comments on the proposed compensation program and how it might be distributed.

18. During this public comment period, the NPS was addressed by fishermen, crew members, fish processors, community members, community leaders, Native Alaskan leaders, and others.

19. From these individuals and groups, the NPS heard testimony regarding personal business losses, local concerns regarding fishing rights and opportunities, the social, economic and ecological impact of the expected displacement of fishermen, the effect on the fished species, and the impact that this proposed compensation program would or could have as precedent for other fishery closures.

20. At certain of these public hearings, the NPS was advised that the commercial Tanner crab fishery was comprised of those fishermen who held permanent lifetime fishing permits, and those who held temporary, or interim permits, and that holders of both kinds of permits stood to suffer loss of livelihood from the proposed restrictions and closures of Tanner crab fishing in the Bay.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

21. At various times during these hearings, testimony was offered questioning the economic and environmental soundness of compensating the retirement of interim permits.

22. Specifically, the NPS was told that paying interim permit holders to retire their permits early would fail completely to serve the goal of the legislation, that is, to reduce the fishery and fairly compensate those persons affected by the reduction, because the interim permits would retire under their own terms, usually within a few years.

23. At one or more of these hearings, Tomie Patrick Lee, the Superintendent of the Glacier Bay National Park and an agent of the United States, made certain representations acknowledging the NPS' awareness that the retirement of interim permits would neither fairly compensate the affected fishermen, nor serve the goals of the legislation.

24. Notwithstanding this awareness and her representations to the contrary, Ms. Lee made promises during the hearings that at least some interim permit holders would be receiving compensation.

25. In August, 2000, the McDowell Group released its final Economic Assessment.

26. The Economic Assessment identified the principal economic losses which would be incurred as a result of restrictions on commercial fishing, and provided an assessment of the potential scope and effects of fishing restrictions in Glacier Bay, including the eventual phase-out of Tanner crab fishing.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

27. The stated purpose of the plan was to compensate permit holders in a manner that was proportional to past earnings from Glacier Bay.

28. Ms. Lee stated that any compensation scheme which the NPS would adopt would be "fair" and would "fairly compensate" potentially affected commercial Tanner crab pot fishermen for their expected losses.

29. The defendant finalized and adopted the Glacier Bay Compensation Plan (the "Plan"). An abbreviated Plan is attached hereto as Exhibit A.

30. The Plan proposed reduction of the number of active permits in the Tanner crab pot fishery in Southeast Alaska.

31. The Plan called for the reduction of the number of active Tanner crab pot permits by means of a sealed low bid process.

32. Under the terms of the Plan, both interim and permanent permits qualified for the bidding process.

33. The sum of $847,000 was allocated for compensation to the Tanner crab pot fishermen, under this bidding process of the Plan.

34. The Plan was finalized by the defendants with a full and complete understanding that a significant number of the bids it would receive would be from interim permit holders.

35. The defendant finalized and adopted the Plan knowing that the distribution of the money to the Tanner crab pot permit holders would not have any long term impact on the fishery.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

36. The Plan states that a maximum number of ten permits will be retired, and a minimum of seven permits must be retired.

37. The Plan provided further, that any funds leftover from this permit reduction would be distributed equally among qualifying Southeast Tanner pot permit holders.

38. The Plan provided further that in the event that the government could not secure at least seven qualifying bids, it would distribute the $847,000 equally among all qualifying Tanner pot permit holders.

39. Other than the failure of the bidding process to identify at least seven qualifying bids, there was no indication on the part of the defendant at any time that the distribution to the low bidders would be abandoned in favor of an across the board distribution to all permit holders, regardless of whether they were part of the bidding process.

40. The NPS solicited bids for the permit reduction program, pursuant to the terms of the Plan.

41. Tomie Patrick Lee, acting as a representative of the United States, had the actual and express authority to make the final determination on each application and to bind the government in a contractual obligation to pay out on the accepted bids.

42. In response to the government's solicitation of bids, the plaintiffs each submitted a bid, based on the value of his permit. In every case, the bids were accompanied by the required affidavit, proving the legitimacy of the bid.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

43. The bids submitted were as follows:

| | |
|---|---|
| Randall Gregg: | $ 64,890.00 |
| Robert Haltiner: | 78,000.00 |
| John E. Jensen: | 77,776.57 |
| Terrence Larson: | 64,450.00 |
| Peter Roddy: | 34,884.50 |
| Daniel Vick: | 74,898.00 |

44. By individual correspondence dated April 5, 2002, addressed to each of the named plaintiffs, Tomie Patrick Lee, acting within her authority, accepted the offers of the plaintiffs on behalf of the United States.

45. Each letter referred to in the preceding paragraph stated: "I am in receipt of your bid for permit reduction for your Tanner Crab Pot Permit . . . under the Glacier Bay Compensation Plan. Your bid, for [amount shown] has been reviewed and accepted." This letter is attached hereto as Exhibit B.

46. Other commercial fishermen not plaintiffs here had their bids accepted and some fishermen who did not submit low enough bids had their bids rejected. A list of bids accepted and "Rejected Bids" by the NPS under the Tanner Crab Permit Reduction portion of the Plan is attached hereto as Exhibit C. This list of successful and unsuccessful bidders was published on a Glacier Bay Compensation Plan web site maintain by the NPS.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

47. The letter cited in Paragraph 45 above further directed each plaintiff to provide certain documentation which would allow the government to issue the promised checks. The plaintiffs complied with these requirements.

48. The defendant failed to perform. Weeks, then months, passed, and no checks were issued.

49. The plaintiffs were placed in economic peril by the defendant's failure to perform.

50. By correspondence dated October 8, 2002, plaintiff Daniel Vick requested an explanation from the defendant for its failure to perform, and advised the defendant that the delay in payment was harming him and other fishermen because they neither had the money the defendant had promised them, nor were they were free to fish their permits in the upcoming season, since they had promised to relinquish them, and they stood ready to perform.

51. By correspondence dated October 28, 2002, signed by Robert L. Arnberger, the Regional Director of the NPS and an agent of the defendant, the NPS replied that the fishermen could fish their permits if they wanted to. This letter did not respond to the inquiry about the whereabouts of the promised payment, or give any hint that the defendant United States had no intention of honoring its promise to pay on the accepted bids.

52. In fact, one week earlier, Mr. Arnberger had signed a "Record of Decision" that announced that the government would not be honoring the promise to pay on the accepted bids.

53. The Record of Decision was not sent to any of the plaintiffs nor was its substance made known to them until approximately March 17, 2003, six months after it was written, and almost one year after the plaintiffs' bids were accepted.

54. The Record of Decision acknowledged the defendant's receipt of ten qualifying low bids.

55. Despite this, the Record of Decision concluded that the permit reduction bid process had not been successful.

56. Instead of honoring the promise made by the NPS Superintendent Tomie Patrick Lee to pay the agreed-upon compensation to the accepted low bidders and dividing the remainder of the $847,000 to the balance of the permit holders as set forth in the Plan, the Record of Decision announced that the government would be distributing the $847,000 equally to all permit holders.

57. Subsequently, all the Tanner crab permit holders including the plaintiffs were each paid $11,000 by virtue of owning a Southeast Alaska Tanner crab pot permit.

58. The plaintiffs brought their claims arising out of their contracts with the government to the government's contracting officer.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

59. By correspondence dated November 24, 2003, to plaintiffs' counsel, the contracting officer, Joy C. Kucinski, denied the applicability of the CDA and denied the plaintiff's contract claims altogether.

## SUBSTANTIVE ALLEGATIONS

## COUNT II
***Breach of Express Contract***

60. Both the plaintiffs and the United States, through its executive agencies and representatives, intended to enter into a binding contract whereby the plaintiffs would relinquish their Tanner crab pot permits in exchange for an agreed-upon amount of compensation to be paid by the government.

61. The government's offer is set forth in the Glacier Bay Compensation Plan.

62. The plaintiffs' acceptance is memorialized in their affidavits and applications submitted as part of the bidding process.

63. The letter dated April 5, 2002, signed by Tomie Patrick Lee evidenced the defendant's acceptance of the plaintiffs' offers and constituted a binding, express contract.

64. The contract described herein constitutes an executive agency contract, within the meaning of 41 U.S.C. § 602(a).

65. Each plaintiff stood ready to relinquish his Tanner crab pot permit, upon performance by the defendant.

66. There was thus mutuality of assent, an offer, acceptance, and consideration.

67. Tomie Patrick Lee had the actual authority to bind the government in contracts with the plaintiffs, as herein alleged.

68. The defendant breached its contract with the plaintiffs by refusing to perform its obligation of paying the amount of the accepted bids.

69. As a result of the defendant's breach, the plaintiffs each incurred damages.

WHEREFORE, the plaintiffs demand judgment against the defendant and compensation in the amount of the accepted bids, plus interest, costs, and such other relief as this Court may deem appropriate.

## COUNT III
### ***Breach of Implied- in-Fact Contract***

70. The plaintiffs repeat and reallege each of the allegations set forth in Counts I and II, as if set forth in full herein.

71. A contract-in-fact was created between the defendant and each of the plaintiffs, by various representations made by the parties, and by the circumstances in which these representations were made.

72. Specifically, the government solicited bids from Tanner crab pot fishermen, for the purpose of selecting between seven and ten permits which would be retired.

73. In exchange for the retirement of the permits, the defendant agreed to pay a sum certain in compensation.

74. This sum was agreed upon by the parties in verbal conversations, and was memorialized on April 5, 2002, in correspondence from Tomie Patrick Lee addressed to each of the plaintiffs.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

75. Tomie Patrick Lee had the actual and express authority to enter into contracts on the part of and in such a way as to bind the government.

76. By her words both written and spoken, the NPS Superintendent Tomie Patrick Lee bound the government in an implied-in-fact contract with the plaintiffs.

77. There was thus mutuality of assent, an offer, acceptance, consideration, and authority on the part of the person representing the Government.

78. The Government refused to pay the agreed-upon sum and thus breached the implied-in-fact contract.

79. As a result, the plaintiffs suffered damages.

WHEREFORE, plaintiffs demand judgment against the defendant and compensation in the amount of the accepted bid, plus interest, costs, and any other relief which this Court deems just and appropriate.

**COUNT IV**
***Misrepresentation in the Inducement***

80. The plaintiffs repeat and reallege each of the allegations set forth in Counts I, II, and III as if set forth in full herein.

81. On information and belief, at the time the defendant United States distributed the Glacier Bay Compensation Plan, it knew that the retirement of interim permits would fail to satisfy the goals of the legislation as well as the stated goals of the Plan itself.

82. On information and belief, the government also knew that the Plan was widely criticized within the communities it was supposed to serve, for its failure to address the inequity of the planned distribution to a small group of low bidders.

83. On information and belief, the defendant was told that the bidding process would never work, and it was urged not to adopt it and to, generate more appropriate funds to compensate the wider group of fishermen for their real losses.

84. Knowing that inclusion of interim permits in the bidding process would result in a compensation scheme that would not serve the goals of the legislation or the larger body of fishermen, the government solicited bids, went through the motions of a bidding process, and agreed to pay out on the winning bids.

85. At some point before the completion of the bidding process, the defendant formed the intent not to pay out on the winning bids.

86. Nevertheless, it continued to make erroneous representations about the efficacy and viability of the Compensation Plan, specifically that the ten low bidders would be awarded compensation based on their past earnings, as reflected in their bids.

87. The defendant knowingly used these and other false statements to induce the plaintiffs to enter into the subject contracts.

88. The representations as herein alleged were material to the plaintiffs who expended time and resources in reliance thereon.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

89. The representations as herein alleged in fact induced the plaintiffs to enter into contracts with the defendant, to submit bids, and to hold in abeyance their permits.

90. The plaintiffs had a legal right to rely on the representations as herein alleged.

91. The plaintiffs did in fact so rely, to their detriment.

92. As a result, the plaintiffs suffered damages.

WHEREFORE, plaintiffs demand judgment against the defendant and compensation in the amount of each individual plaintiff's permit bid, plus interest, costs, attorney's fees, and any other relief which this Court deems just and appropriate.

## COUNT V
***Tortious Breach of Contract***

93. The plaintiffs repeat and reallege each of the allegations set forth in Counts I, II, III, and IV as if set forth in full herein.

94. The parties hereto had certain duties to each other, arising out of their privity of contract.

95. In violation of those duties, the defendant formed the intent to repudiate the contract with the plaintiffs months if not close to one year before it informed the plaintiffs of its intention.

96. The defendant knew the contracts would be relied upon by the plaintiffs to their detriment, and yet the defendant knowingly and intentionally refused to inform them that the contracts would not be honored, until after the plaintiffs suffered considerable harm.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

97. The defendant had no commercially justifiable excuse for repudiating the contracts, or for withholding the fact of its repudiation from the plaintiffs.

98. The plaintiffs are not at fault and could not have foreseen the defendant's repudiation of the contracts, or for the defendant's withholding the fact of its repudiation from the plaintiffs.

99. As a result of the unjustifiable repudiation and breach by the defendant, the plaintiffs suffered damages.

WHEREFORE, plaintiffs demand judgment against the defendant and compensation in the amount of the amount of each plaintiff's bid, plus interest, costs, attorney's fees any other relief which this Court deems just.

**COUNT VI**
***Bad Faith***

100. The plaintiffs repeat and reallege each of the allegations set forth in Counts I, II, III, IV, and V as if set forth in full herein.

101. At all times relevant hereto, the defendant and its agents had a duty of good faith and fair dealing, which it owed to the plaintiffs.

102. The defendant breached this duty in numerous ways.

103. Specifically but not by way of limitation,

1) The defendant promised to fairly and adequately compensate the plaintiffs for their expected losses based on past earnings and yet it devised a compensation scheme that it knew, based on its specialized knowledge, would never come close to achieving that goal.

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

2) In doing so, the defendant ignored the professional advice it had solicited and paid for with the citizens' money.

3) The defendant knew before the bidding process began that any plan to retire interim permits would not serve the purpose of the legislation, nor would it fairly and adequately compensate those persons affected by the regulations of the fishery, and yet it solicited bids from interim permit holders and promised to pay the lion's share of the appropriated compensation money to them.

4) The defendant formed the intent to repudiate the contracts with the plaintiffs eleven months and two weeks before it informed any of the plaintiffs of its intent, knowing that during that time the plaintiffs would suffer economic losses in reliance on the defendant's promise to pay on the accepted bids.

104. The Glacier Bay Compensation Plan was so badly conceived and negligently and intentionally mismanaged as to evidence bad faith.

105. The plaintiffs had a right to rely on the good faith of and to expect fair dealing from the defendant.

106. The defendant's actions both in soliciting the plaintiffs' participation in a bidding scheme that it knew would never work, in repudiating its obligations under the contracts it entered into with the plaintiffs, and in keeping the fact of its intention to repudiate a secret from the plaintiffs knowing and expecting that they would suffer damages, constitutes bad faith.

107. As a result, the plaintiffs suffered damages.

WHEREFORE, plaintiffs demand judgment against the defendant and compensation in the amount of each plaintiff's permit bid (a total of $394,899.07), plus interest, costs, attorney's fees, and any other relief that this Court deems just and appropriate.

Dated this 15th day of March, 2004.

**LAW OFFICE OF BRUCE B. WEYHRAUCH, LLC.**

Bruce B. Weyhrauch

Bruce B. Weyhrauch, Of Attorneys for Plaintiffs
Alaska Bar Number 8706057

LAW OFFICE OF
BRUCE B. WEYHRAUCH, LLC
114 S. FRANKLIN ST.
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566 FAX: (907) 463-5858

# Compensation Plan

## Glacier Bay Commercial Fishing Compensation Program

May 2001

Glacier Bay National Park and Preserve

OMB Control Number: 1024-0240
Applicants for compensation under this plan are not required to respond to this collection of information unless the currently valid OMB Control Number is displayed in a manner that is reasonably calculated to inform the public. 5 CFR 1320.5(b)

United States Department of the Interior • National Park Service • Alaska Region

# Table of Contents

*TABLE OF CONTENTS* .......... I

*INTRODUCTION* .......... 1

*CLAIM AND PAYMENT PROCESSES* .......... 2

# Introduction

**Dear Reader:**

After reviewing comments from the public and the State of Alaska this Compensation Plan has been developed by the National Park Service (NPS) to implement provisions of Section 123 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act (P.L. 105-277) as amended by Section 501 of the 1999 Emergency Supplemental Appropriations Act (P.L. 106-31). The law authorized and funded a $23 million compensation program to "fairly compensate United States fish processors, fishing vessel crew members, communities and others negatively affected by restrictions on fishing in Glacier Bay National Park."

This Compensation Plan was finalized from your comments and ideas on the range of options that were considered for apportionment of the $23 million compensation provided by Congress. The State of Alaska has assisted in gathering public input and other information that has been considered in the development of this plan. The purpose of this report is to:

- Provide background information.
- Outline eligibility criteria and compensation.
- Provide information on how to apply for compensation.
- Outline how compensation claims will be reviewed, qualifying applicants paid, and appeals adjudicated.
- Relate key questions that have been raised during public meetings.

**The goal of the compensation plan is to fulfill the intent of the law; to fairly compensate those negatively affected within the constraints of the available funding.**

The law calls for people, businesses, and communities adversely affected by restrictions on commercial fishing in Glacier Bay to be compensated fairly. Because "fairly" is a relative term, public expectations about this compensation program vary widely. The National Park Service has used all information available to make this compensation as fair as possible.

Thank you for your help and interest in the Glacier Bay Commercial Fishing Compensation Program.

Sincerely,

Tomie Patrick Lee
Superintendent, Glacier Bay National Park

## *Filing a Claim for Compensation*

To apply for compensation through the Glacier Bay Commercial Fisheries Compensation Program, an individual, business (partnership or corporation), or community must file an application with NPS offices in Juneau or Gustavus at one of the following addresses:

| | |
|---|---|
| *Glacier Bay National Park*<br>*Juneau Field Office*<br>*2770 Sherwood Lane #I*<br>*Juneau, AK 99801*<br><br>*877-886-8831 Toll Free*<br>*907-586-7047 Manager*<br>*907-586-7078 Fax*<br><br>*e-mail:* GLBA_comm_fishing@nps.gov | *Glacier Bay National Park*<br>*PO Box 140*<br>*Gustavus, AK 99826*<br><br>*907-697-2230 Superintendent*<br>*907-697-2654 Fax*<br><br>*Website:*<br>http://www.glba.nps.gov/glba/learn/preserve/issues/fish/ |

Application instructions will be available from these NPS offices by September 28, 2001. Applications must be received (if delivered by other than the U.S. Postal Service) or postmarked by **January 28, 2002.** The application period is limited because all claims must be considered before any final decision regarding compensation allocations can be made or any compensation can be paid. **Applications received postmarked after January 28, 2002 will be rejected without being considered.**

## *Documentation Requirements*

Pursuant to Section 123 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act (Pub. L. 105-277, October 21, 1998), as amended by Section 501 of the 1999 Emergency Supplemental Appropriations Act (Pub. L. 106-31, May 21, 1999), the National Park Service has prepared a plan for distributing compensation to individuals, businesses and communities affected by commercial fishing restrictions in Glacier Bay. The plan requires you to submit certain documentation necessary to demonstrate your eligibility to receive compensation, and calculate your individual compensation payment.

**The deadline for submitting documentation is January 28, 2002.** However, you are encouraged to submit your ***documentation (described below)*** as soon as possible to avoid delays in processing.

Please provide the following requested information to: Program Manager, Compensation Program Application, Glacier Bay National Park and Preserve, 2770 Sherwood Lane, Suite I, Juneau, AK 99801 (Phone: 907-586-7027)

***Eligibility Criteria and Documentation Requirements***

***Information <u>required from all parties seeking compensation</u> includes:***

- Full Legal Name
- Business Name (if applicable)
- Physical Address
- Mailing Address
- Phone number
- Fax number (if applicable)
- Email address (if applicable)

***ELIGIBILITY AND DOCUMENTATION REQUIREMENTS FOR PERMIT HOLDERS***

***Eligibility Criteria***

- Currently owns an Alaska limited entry permit, or IFQ share, for each fishery for which compensation is being sought.
- A history of commercial fishing in Glacier Bay proper for each fishery for which compensation is being sought during the qualifying eligibility period (1989-1998).
- Specific to the Tanner Crab pot fishery:
    - To qualify for compensation for predicted permit value loss, a permit holder must submit a notarized, personal affidavit stating that they hold a current permit, are U.S. citizens and are seeking compensation for lost permit value. They must also submit a copy of their current State of Alaska Limited Entry Permit for the Tanner pot fishery. This payment will be available to all Southeast Alaska Tanner pot permit holders.
    - A proposal put forth by the public suggesting that this pool of funds be used to reduce the number of active permits, thereby reducing competition and negating the "displacement effect" caused by the new restrictions on commercial fishing in Glacier Bay, has been adopted. Those wishing to participate in the permit reduction sealed bid process must submit a notarized, personal affidavit attesting to their U.S. citizenship, ownership of a Southeast Alaska Tanner crab pot permit and their bid amount, as well as proof of ownership of a current Southeast Alaska Tanner crab pot permit.

Documentation of commercial fishery harvest from Glacier Bay Proper is important for calculating individual compensation amounts. Compensation for historical catch is based on an individual's proportion of the overall Glacier Bay harvest, as reported by compensation applicants, of any given species during the qualifying eligibility period (1989-1998).

***Information <u>required from all permit holders</u> seeking compensation:***

- Name of vessel(s) fished in Glacier Bay during the 1989-98 period (indicate if you owned or leased the vessel)
- Copy of current permit for each fishery for which you are seeking compensation (Tanner pot, Tanner Ring, halibut, Dungeness crab, power troll, hand troll, King crab, and/or groundfish)
- Documentation of your annual Glacier Bay harvest (total pounds) for each fishery for which you are seeking compensation. This documentation should include a Commercial Fisheries Entry Commission (CFEC) report (or copies of fish tickets) for your landings for each fishery for each year, 1989-98. You may supplement this data with logbook data if you feel that CFEC data is

inaccurate or incomplete. Submit any other information you have that may give the NPS an accurate assessment of the value of your Glacier Bay harvest for the years 1989-98.

When requesting catch data from CFEC, permit holders in the crab fisheries must request harvest and value data (for statistical areas 114-60, 114-70 through 75, and 114-77. Trollers' Glacier Bay harvest is included in area 114. Because area 114 includes waters outside of Glacier Bay, CFEC harvest data for area 114 alone will not be sufficient to document losses. Trollers must provide logbook data or additional documentation concerning their Glacier Bay harvest. Halibut fishermen must provide their harvest data for area 184, for the years 1992 to 1998. Halibut fishermen wishing to be gain consideration for harvest before 1992 will need to provide logbook data or other documentation. The groundfish statistical areas for Glacier Bay are 365830, and portions of 365804 and 355801. A signed and notarized release of information form must be submitted to CFEC before they can release your information. This catch data information can be sent either to the requester or the National Park Service Juneau Field Office.

To request a CFEC report of your harvest from Glacier Bay, complete the attached CFEC Request for Fish Ticket Information form and mail it to: CFEC, 8800 Glacier Hwy. #109, Juneau, AK, 99801. Forms may also be found at www.cfec.state.ak.us or by calling CFEC at (907)789-6160. The cost of a CFEC harvest report is $22.

- A notarized affidavit providing a summary of your annual Glacier Bay harvest (pounds) for each year during the 1989-98 period for each fishery for which you are seeking compensation. Only one affidavit is required if you are seeking compensation for more than one fishery.

### *ELIGIBILITY AND DOCUMENTATION REQUIREMENTS FOR COMMERCIAL FISHING CREW MEMBERS*

#### *Eligibility Criteria*

- Current participation in the fishing industry as evidenced by ownership of a current State of Alaska crewmember license, or a CFEC limited entry permit for any fishery. (A CFEC permit doubles as a crewmember license under Alaska Department of Fish & Game regulations.)
- Some level of participation in fishing activities in Glacier Bay proper for each fishery for which compensation is being sought during the qualifying eligibility period (1989-1998).

Documentation of crewmember earnings from Glacier Bay proper is important for calculating individual compensation amounts. Compensation for crewmembers is based on an individual's proportion of the overall Glacier Bay crewmember earnings during the qualifying eligibility period (1989-1998).

#### *Information required from all commercial fishing crew seeking compensation*:

- Name of vessel(s) you fished on in Glacier Bay from 1989-1998.
- Name and phone number of skippers that you fished for in Glacier Bay during these years.
- 1099 or W-2 forms for each year you fished in Glacier Bay.
- A notarized affidavit from each skipper indicating the percentage of your earnings for each year (as indicated on your 1099 or W-2 tax forms) that can be attributed to your work in Glacier Bay. ***If this information is unavailable because the skipper is deceased, incarcerated or otherwise unreachable, we will accept a notarized affidavit from the applicant attesting to the estimated percentage of earnings derived from Glacier Bay.***
- Reports from ADF&G showing crewmember fishing license history or CFEC permit history for the years applicable to the compensation claim. Crewmember license history information is available from: Alaska Department of Fish and Game, Licensing Section, P.O. Box 25525, Juneau, AK, 99802-5525 or by phone at (907) 465-2376.

- Any other information you may have that will give the NPS an accurate assessment of your crew earnings from commercial fishing in Glacier Bay during the years 1989-98. This might include logbook data, income tax returns, affidavits from fellow crewmen or other information.
- Notarized affidavit providing a summary of your annual earnings from Glacier Bay for each year during the 1989-98 period for each fishery for which you are seeking compensation. If you are seeking compensation for more than one fishery, only one affidavit is required. However, in your affidavit you must provide your annual earnings for each Glacier Bay fishery in which you participated.

### *ELIGIBILITY AND DOCUMENTATION REQUIREMENTS FOR PROCESSORS*

#### *Eligibility Criteria*

- Some level of production of fish or crab harvested from Glacier Bay Proper during the eligibility period (1989-1998).
- Current participation as a seafood processor as evidenced by a current/valid State of Alaska Fisheries Business License for primary fish buyers/processors.
- Currently wholly US owned.

***Information required from all seafood processors seeking compensation:***

- Business name(s) and license(s) under which fish or crab were purchased from Glacier Bay fishermen.
- CFEC data, or copies of fish tickets, providing gross poundage and amount (ex-vessel) paid by your business for fish that was harvested in Glacier Bay, for each species for each year during the 1989 to 1998 period.
- Documentation for each product type produced from Glacier Bay fish, including:
    - A list of product types sold
    - average recovery rates (net product weight divided by gross purchase weight)
    - total net weight sold
    - gross revenue per net pound sold.

  Again, please provide this data by product type for each year for the period 1989-98.
- Copies of your Commercial Operators Annual Report (COAR) for each year that your business purchased Glacier Bay fish.
- If you feel that your business has suffered economic damages beyond what are reflected by your gross revenue per net pound, provide supporting documentation.
- A notarized affidavit summarizing the volume and value of your business's documented production of Glacier Bay fish.

### *ELIGIBILITY AND DOCUMENTATION REQUIREMENTS FOR PROCESSOR EMPLOYEES*

#### *Eligibility Criteria*

- Current employment at seafood processing facility. Current employment is defined as being employed at a Southeast Alaska seafood processing facility during the 2001 season.
- Past income derived from processing fish harvested in Glacier Bay during the eligibility period (1989-1998).

***Information <u>required from all seafood processor employees</u> seeking compensation*:**

- Copies of your W-2 forms from those processing companies for each year you processed Glacier Bay fish.
- A notarized affidavit from you summarizing your job responsibilities the duration of your employment and what role you played in processing Glacier Bay fish.
- A notarized affidavit from the processor attesting to your employment during the qualifying years (1989-1998) and what estimated portion of your yearly earnings from that employer is attributable to product harvested in Glacier Bay proper. ***If this information is unavailable because your former employer is deceased, out of business, incarcerated or otherwise unreachable, we will accept a notarized affidavit from the applicant attesting to the estimated percentage of earnings derived from Glacier Bay.***

## *ELIGIBILITY AND DOCUMENTATION REQUIREMENTS FOR SUPPORT BUSINESSES*

### *Eligibility Criteria*

- Some level of economic dependence on commercial fishing/processing activities resulting from fish harvested in Glacier Bay proper during the qualifying period (1989-1998).
- This category includes any business providing direct goods or services to commercial fishermen or seafood processors who relied on Glacier Bay fish. This could include, but is not limited to, packers, businesses providing repair or transportation services, or boat owners who have leased boats to fishermen who fished in Glacier Bay during the 1989-1998 eligibility period. This category also includes business providing indirect goods or services to commercial fishermen or seafood processors who relied on Glacier Bay fish. This could include, but is not limited to restaurants, laundries, and grocery stores. Further, this category is intended to encompass any individual or business not included in one of the categories listed above.

***Information <u>required from all support businesses</u> seeking compensation*:**

- Business name (or names) under which your business was operated.
- Copy of State of Alaska business license(s) or State of Alaska business license numbers under which your support business was operated, including the business activity code.
- A notarized affidavit describing your business' direct and/or indirect dependence on commercial fishing in Glacier Bay during the 1989-1998 eligibility period.

***Recommended sources of supporting documentation*:**

- Profit and loss statements, tax returns, receipts, invoices or other accounting information from the years (1989 through 2000) prior to and following Glacier Bay commercial fishing restrictions.

## *ELIGIBILITY AND DOCUMENTATION REQUIREMENTS FOR COMMUNITIES*

Communities will be eligible for compensation in two areas; compensation based on lost fish tax revenue, and/or compensation for diminished local economic activity. Compensation for lost fish tax

revenue is available only to communities that have earned such revenue in the past. Communities seeking this compensation must provide documentation of total purchases of Glacier Bay fish by local processors for each year 1989-98.

Communities will also be compensated on the basis of points for other lost economic activity. The point system was discussed in Section III. In order to receive compensation in this manner, a community must apply for such compensation through an official, written request for compensation from either the mayor or the city council or (in the case of unincorporated communities) the State of Alaska recognized community or town council.

## Claim Review and Determination

The superintendent of Glacier Bay National Park will make the final determination for each application, including both eligibility and compensation based on the compensation plan and the information and documentation provided by the applicant.

## Compensation Payment

All applicants that are determined eligible will receive some level of compensation. The amount of compensation paid to an eligible applicant will be determined by the allocations detailed in this compensation plan as informed by the Economic Assessment. Eligible applicants will receive a decision from the superintendent regarding their eligibility and the estimated compensation amount. Ineligible applicants will be notified at the same time that they are not eligible to receive compensation.

No payments will be made to any applicant until all administrative appeals are decided. Due to the fixed amount of the total compensation available, NPS needs to consider and decide all appeals together before payment amounts are known. Decisions on appeals could result in changes to individual compensation amounts. Therefore, no claims can be paid until all appeals are decided. Instructions on payment procedures will be provided to each eligible applicant. The federal government is required to use electronic payment procedures. Payment will be made in the form of one lump sum or, at the recipients' option, over a two- or three-year period.

## Appeals

Any applicant will have the right to appeal the superintendent's decision regarding eligibility for compensation or the amount of compensation awarded under the compensation program. ***Appeals must be made to the Regional Director, Alaska Region, 2525 Gambell St., Anchorage, AK, 99503.*** The appeal must be physically received if delivered other than by U.S. mail, or postmarked if sent by U.S. mail, no more than 60 days from the ***postmark*** date of determination letters. An applicant who appeals must substantiate the basis of their disagreement with the superintendent's decision. An opportunity for an informal oral hearing with a hearing officer will be provided at the applicant's request. After consideration of written and oral hearing materials prepared by the hearings officer, the NPS Alaska Regional Director will affirm, reverse or modify the superintendent's decision and explain the basis of the decision in writing. The regional director's decision will be the final NPS action in the appeal process.

# United States Department of the Interior

NATIONAL PARK SERVICE

Glacier Bay National Park and Preserve
Juneau Field Office
2770 Sherwood Lane, Suite 1
Juneau, Alaska 99801-8545

IN REPLY REFER TO:

N1619(b)

April 5, 2002

Randal Gregg
PO Box 20373
Juneau, AK 99802

Dear Mr. Gregg:

I am in receipt of your bid for permit reduction for your Tanner Crab Pot Permit, dated January 23, 2002, under the Glacier Bay Compensation Plan. Your bid, for $64,890 has been reviewed and has been accepted. You will receive a permit reduction agreement and a vendor/ACH enrollment form (for processing your payment) in the coming weeks. If you have any questions, please do not hesitate to call the staff at our Juneau field office at (907)586-7027.

Sincerely,

Tomie Patrick Lee

Tomie Patrick Lee
Superintendent, Glacier Bay National Park

Exhibit B
Page 1 of 6

United States Department of the Interior

NATIONAL PARK SERVICE

Glacier Bay National Park and Preserve
Juneau Field Office
2770 Sherwood Lane, Suite 1
Juneau, Alaska 99801-8545

IN REPLY REFER TO:

N1619(b)

April 5, 2002

Robert G. Haltiner
PO Box 808
Petersburg, AK 99833

Dear Mr. Haltiner:

I am in receipt of your bid for permit reduction for your Tanner Crab Pot Permit, dated December 18, 2001, under the Glacier Bay Compensation Plan. Your bid, for $78,000 has been reviewed and has been accepted. You will receive a permit reduction agreement and a vendor/ACH enrollment form (for processing your payment) in the coming weeks. If you have any questions, please do not hesitate to call the staff at our Juneau field office at (907)586-7027.

Sincerely,

Tomie Patrick Lee
Superintendent, Glacier Bay National Park

United States Department of the Interior
NATIONAL PARK SERVICE

Glacier Bay National Park and Preserve
Juneau Field Office
2770 Sherwood Lane, Suite 1
Juneau, Alaska 99801-8545

IN REPLY REFER TO:

N1619(b)

April 5, 2002

John E. Jensen
PO Box 681
Petersburg, AK 99833

Dear Mr. Jensen:

I am in receipt of your bid for permit reduction for your Tanner Crab Pot Permit, dated January 26, 2002, under the Glacier Bay Compensation Plan. Your bid, for $77,776.57 has been reviewed and has been accepted. You will receive a permit reduction agreement and a vendor/ACH enrollment form (for processing your payment) in the coming weeks. If you have any questions, please do not hesitate to call the staff at our Juneau field office at (907)586-7027.

Sincerely,

Tomie Patrick Lee

Tomie Patrick Lee
Superintendent, Glacier Bay National Park

COPY

Exhibit B
Page 3 of 6

# United States Department of the Interior

NATIONAL PARK SERVICE

Glacier Bay National Park and Preserve
Juneau Field Office
2770 Sherwood Lane, Suite 1
Juneau, Alaska 99801-8545

IN REPLY REFER TO:

285.351

N1619(b)

April 5, 2002

Terry Larson
PO Box 580
Tokeland, WA 98590

Dear Mr. Larson:

I am in receipt of your bid for permit reduction for your Tanner Crab Pot Permit, dated January 22, 2002, under the Glacier Bay Compensation Plan. Your bid, for $64,450 has been reviewed and has been accepted. You will receive a permit reduction agreement and a vendor/ACH enrollment form (for processing your payment) in the coming weeks. If you have any questions, please do not hesitate to call the staff at our Juneau field office at (907)586-7027.

Sincerely,

Tomie Patrick Lee

Tomie Patrick Lee
Superintendent, Glacier Bay National Park

United States Department of the Interior

NATIONAL PARK SERVICE

Glacier Bay National Park and Preserve
Juneau Field Office
2770 Sherwood Lane, Suite 1
Juneau, Alaska 99801-8545

IN REPLY REFER TO:

283.349

N1619(b)

April 5, 2002

Peter Roddy
PO Box 6436
Sitka, AK 99835

Dear Mr. Roddy:

I am in receipt of your bid for permit reduction for your Tanner Crab Pot Permit, dated January 11, 2002, under the Glacier Bay Compensation Plan. Your bid, for $34,884.50 has been reviewed and has been accepted. You will receive a permit reduction agreement and a vendor/ACH enrollment form (for processing your payment) in the coming weeks. If you have any questions, please do not hesitate to call the staff at our Juneau field office at (907)586-7027.

Sincerely,

Tomie Patrick Lee

Tomie Patrick Lee
Superintendent, Glacier Bay National Park

United States Department of the Interior

NATIONAL PARK SERVICE

Glacier Bay National Park and Preserve
Juneau Field Office
2770 Sherwood Lane, Suite 1
Juneau, Alaska 99801-8545

IN REPLY REFER TO:

N1619(b)

April 5, 2002

Daniel Vick
3403 Bay Road
Ferndale, WA 98248

Dear Mr. Vick:

I am in receipt of your bid for permit reduction for your Tanner Crab Pot Permit, dated October 30, 2001, under the Glacier Bay Compensation Plan. Your bid, for $74,898 has been reviewed and has been accepted. You will receive a permit reduction agreement and a vendor/ACH enrollment form (for processing your payment) in the coming weeks. If you have any questions, please do not hesitate to call the staff at our Juneau field office at (907)586-7027.

Sincerely,

Tomie Patrick Lee

Tomie Patrick Lee
Superintendent, Glacier Bay National Park

COPY

OPTIONAL FORM 99 (7-90)

**FAX TRANSMITTAL**

| | |
|---|---|
| | # of pages ▸ 3 |
| To Dan Vick | From NPS / Jeff |
| Dept./Agency 366-0431 | Phone # (907) 586-7027 |
| Fax # (360) [redacted] | Fax # (907) 586-7078 |
| NSN 7540-01-317-7368 5099-101 | GENERAL SERVICES ADMINISTRATION |

Exhibit B
Page 6 of 6

**Tanner Crab Permit Reduction**

| Name | City | Amount |
|---|---|---|
| Roddy, Peter | Sitka | $34,884.50 |
| Larson, R. Terrence | Tokeland | $64,450.00 |
| Gregg, Randy | Juneau | $64,890.00 |
| Vick, Daniel R. | Ferndale | $74,898.00 |
| Marques, Mike | Bellingham | $75,000.00 |
| Jensen, John E. | Petersburg | $77,776.57 |
| Haltiner, Robert G. | Petersburg | $78,000.00 |
| Perry, James | Juneau | $79,800.00 |
| Nilsen, Peter | Petersburg | $80,000.00 |
| Joyce, Bruce | Portland | $80,000.00 |
| | | $709,699.07 |

**Rejected Bids:**

| | | |
|---|---|---|
| Otness, Nels K. | Petersburg | $160,000.00 |
| Pasquan, John | Juneau | $200,000.00 |
| Miller, James | Petersburg | $160,000.00 |
| Kerr, Carl | Sitka | $150,000.00 |
| McDonald, John A | Petersburg | $149,500.00 |
| Karuza, John | Bellingham | $130,000.00 |
| Kalk, Donald | Juneau | $470,000.00 |
| Lewis, Joseph | Sitka | $130,000.00 |
| Kohlhase, Robert | Juneau | $200,000.00 |
| Will, Craig | Hoood River | $83,400.00 |
| Breseman, John | Pelican | $200,000.00 |
| Thomassen, Steve Jr. | Wrangell | $110,000.00 |
| Odegaard, James | Stanwood | $105,000.00 |
| McCay, Roderick | Petersburg | $91,000.00 |
| Hakala, Ronald | Juneau | $87,321.42 |
| Hinchman Sr., John | Sedro Woolley | $300,000.00 |

Exhibit C
Page 1 of 1